UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X
MARJORIE SNEED-OWENS,

                       Client,

                                                            COMPLAINT

—Against—                                           JURY TRIAL
                                                              DEMANDED

NYU LANGONE HEALTH SYSTEM,

                                  Defendant.
————————————————————————X

    MARJORIE SNEED-OWENS, by the Law Offices of Ambrose Wotorson, alleges as follows:

I.      <u>INTRODUCTION</u>

1. MARJORIE SNEED-OWENS, whom at all relevant times, served in the position of a Director for NYU Langone Health System, was subjected to FMLA retaliation and disability discrimination.

2. Marjorie J. Sneed-Owens was also subjected to a wrongful termination on or March 6, 2020.

3. It is beyond dispute that Marjorie J. Sneed-Owens was satisfactorily performing, on a full-time basis at the time of the termination.

4. Plaintiff, Marjorie J. Sneed-Owens, is now unemployed, despite her best efforts to find comparable work.

II.      <u>JURISDICTION</u>

5. This Court has jurisdiction over this matter under 29 U.S.C. § 2615 (a)(2). Venue is proper because defendant's headquarters is located in this judicial district.

III.     PARTIES

6. MARJORIE SNEED-OWENS, at all relevant times, served as a Director for NYU Langone Health System.

7. NYU Langone Health System's headquarters is a located in New York County, New York, and it is incorporated in the State of New York. However, it employed Plaintiff in a Nassau County location. It may sue be sued, and at all relevant times, it employed Marjorie J. Sneed-Owens as a Director.

8. NYU Langone Health System's corporate headquarters is located at 550 First Avenue, New York, NY 10016

IV.     FACTUAL AVERMENTS

9. Marjorie J. Sneed-Owens re-alleges all of the prior paragraphs above, as if fully-stated.

10. Plaintiff, Marjorie J. Sneed-Owens, was hired as a Director of the Tumor Registry of Defendant on or about August 14, 2014.

11. Defendant, at all relevant times, was the recipient of federal funds, including but not limited to, grants from the United States Department of Health and Human Services.

12. Plaintiff was tasked to work in Nassau County New York, as the Tumor Registry is located in Nassau County, New York.

13. Plaintiff's performance had been fully satisfactory at all relevant times.

14. On or about the evening of January 14, 2020, when Plaintiff was no longer at work, she became very ill with symptoms consisting of sharp stomach pains and vomiting, and an inability to walk or to stand without doubling over in pain and feeling nauseous.

15. At 12:17 a.m. on January 15, 2020, Plaintiff sent Janet Shehata, a nurse and her supervisor who was also the Administrative Director, a text message informing her that she was "sick" and would not make it in later that morning.

16. Later that day, after persistent symptoms, which now included diarrhea, Plaintiff visited a NYU-Langone Urgent Care Center.

17. The Urgent Care Center, in turn, after briefly examining her, sent Plaintiff to the Emergency Department where the medical staff diagnosed her with an inflamed pancreas and an inflamed gall bladder, which are serious medical conditions.

18. Moreover, Plaintiff's inflamed pancreas and inflamed gall bladder impacted one or more of her major life functions, including walking and standing.

19. Plaintiff was held in the Emergency Department where the medical staff continued to monitor her and administer various medications and tests, until about 2:25 a.m. on January 16, 2020, when Plaintiff was finally discharged.

20. As Sneed-Owens was being discharged, she sent from her cellular phone, an email to Janet Shehata and Sherri Jones-Forsett, who served as a department timekeeper, stating that she would not be coming in for a few days after leaving the "emergency room."

21. At 6:29 a.m., Shehata asked Sneed-Owens if she was suffering from "flu" and if she had a confirmed "flu test."

22. Shehata also asked, "what do you mean "the next few days'?"

23. Later in the day on January 16, 2020, Ms. Sneed-Owens reasonably complained to the Human Resources Department about Shehata's querying her about her precise diagnoses, which Plaintiff viewed as interfering with her right to emergency leave for serious medical conditions.

24. Plaintiff also complained because Shehata had a history of interfering with and failing to fully respect, honor or recognize Plaintiff's medical leaves.

25. For example, in on March 22, 2019, after Plaintiff has already timely called out sick, Shehata contacted Plaintiff anyway to find out if she was coming in for a meeting.

26. Calling Plaintiff and asking her if she was coming in for a meeting, illness notwithstanding, was an attempt to get Plaintiff to cancel her leave and work anyway.

27. On May 28, 2019, after Plaintiff had already sent Shehata an email stating that she was calling out sick, Shehata called and texted Plaintiff to find out if she was calling into a meeting, even though she was sick.

28. Calling Plaintiff and asking her if she was calling in for a meeting anyway, illness notwithstanding, was an attempt to get Plaintiff to cancel her leave and to work anyway.

29. When Shehata learned that another employee, Marissa, had also called out sick, Shehata sarcastically asked Plaintiff if Marissa "…control[s] [Plaintiff's] schedule."

30. In any event, Human Resources, through Diego L. Chiarandini, pushed back on Plaintiff's complaint after speaking with Janet Shehata, thereby making Shehata aware of Plaintiff's complaint.

31. The Human Resources representative, Chiarandini, quickly concluded that Ms. Shehata's underlying exchange with Sneed-Owens was a "misunderstanding," and downplayed the incident, stating that Shehata was an "experienced manager."

32. The very next day on January 17, 2020, Plaintiff faxed a medical note dated January 16, 2020 to Shehata, from a physician, Christine DeSanno, stating that She (Plaintiff) was "seen" in the Emergency Department on January 15, 2020, and that she may return to work on January 20, 2020.

33. Ms. Sneed-Owens returned to work on January 20, 2020 as scheduled.

34. Yet, on March 3, 2020, Shehata wrote to Plaintiff and claimed that NYU was conducting a site visit on March 6, 2020, and that Plaintiff had to be present for said visit.

35. As well, Shehata wrote to Plaintiff claiming that she wanted to have a "brainstorming" session with Plaintiff, one on one, just prior to the site visit.

36. In fact, this was an elaborate ruse to have Plaintiff report at a time certain so that she could be terminated.

37. Indeed, three days later, on March 6, 2020, and less than two months after Plaintiff first complained about Shehata's interference with her leave, Shehata suddenly terminated Plaintiff without prior warning or notice, upon the pretextual claim that Plaintiff's position had been "eliminated."

38. Notably, Plaintiff was not offered any other position within defendant's organization.

39. As well, no other positions were eliminated within the Tumor Registry Department where Plaintiff worked.

40. Plaintiff was the only person who had her position "eliminated."

41. In fact, Plaintiff was terminated because she had a medical emergency due to a serious medical condition; because she had to miss a few days because of that unforeseeable serious medical condition; and because she vehemently, but professionally, complained to Defendants' Human Resources Department about her manager's seeming interference with her need for emergency medical leave.

42. These facts reasonably suggest that Sneed-Owens was subjected to FMLA retaliation and disability discrimination.

43. As a proximate result of defendants' illegal acts towards Plaintiff, Plaintiff has suffered a loss of earnings, and other employment benefits.

44. As a further proximate result of defendant' illegal actions towards Plaintiff, Plaintiff has suffered impairment and damage to Plaintiff's good name and reputation.

45. As a further proximate result of defendant's illegal actions towards Plaintiff, has suffered embarrassment, mental anguish and emotional injuries.

46. As a further proximate result of defendant's illegal actions towards Plaintiff, she has been unable to ameliorate her employment situation, despite her best efforts to do so, including not being able to find permanent, comparable and stable employment.

47. Defendant's illegal actions were willful, egregious and were malicious, and were intended to injure Plaintiff, and were done with reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages and liquidated damages, where available.

V.     CAUSES OF ACTION

FIRST CAUSE OF ACTION
(29 U.S.C. § 2615 (a)(2)) – FMLA Retaliation.

48. Plaintiff re-alleges all of the prior paragraphs above, as if fully-stated.

49. NYU Langone Health System's violated 29 U.S.C. § 2615 (a)(2) when it terminated Plaintiff on March 6, 2020, because of her protected activities in complaining about and opposing what she reasonably viewed as interference with her protected FMLA rights to seek leave on an emergency basis for serious medical conditions.

SECOND CAUSE OF ACTION
(29 U.S.C. § 701 et seq.) – Rehabilitation Act

50. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

51. Defendant, who received federal funds at all relevant times, terminated Plaintiff on March 6, 2020 because: (1) she became impaired and disabled due to an inflamed pancreas and inflamed gall bladder, and (2) she complained about what she reasonably believed to be a violation of her rights to seek a reasonable accommodation due to such impairment and disability.

THIRD CAUSE OF ACTION
(NYSHRL Section 296) - Disability Discrimination

52. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

53. NYU Langone Health System violated § 296 of the New York Human Rights Law, by terminating Plaintiff on March 6, 2020 because: (1) she became impaired and disabled due to an inflamed pancreas and inflamed gall bladder, and (2) she complained about what she reasonably believed to be a violation of her rights to seek a reasonable accommodation due to such impairment and disability.

WHEREFORE, Plaintiff prays that this Court grant judgment to her containing the following relief:

   a. An impaneled jury;

   b. Back and front pay, along with other lost benefits, due to her termination;

   c. An award of damages for humiliation, mental pain and suffering associated with her termination;

   d. Punitive and liquid date damages due to defendant's willful, reckless, malicious and egregious actions;

   e. The costs of this action and Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

   f. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 23, 2021

_____x
*Ambrose W. Wotorson, Jr., Esq.*
Law Offices of Ambrose Wotorson
225 Broadway, 41st Floor
New York, New York 10007
212-884-5985
Loaww1650@aol.com